**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Aqui McKeithen,

     Plaintiff

v.

Ms. Jones, et al.,

     Defendants

Case No.: 2:23-cv-01691-JAD-DJA

**Order Screening Complaint
and Dismissing and Closing Case**

[ECF No. 4]

Plaintiff Aqui McKeithen brings this civil-rights action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,[1] claiming that his First and Eighth Amendment rights were violated by the employees of the Nevada Southern Detention Center ("NSDC"), a private prison in Pahrump, Nevada.[2]  McKeithen paid the full filing fee for a civil action.[3] Because McKeithen was incarcerated at the time he initiated this action, I screen his complaint under 28 U.S.C. § 1915A.[4]  Having done so, I find that he has not pled any colorable claim, so I dismiss this action and close this case.

**I.**    *Bivens* **screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[5]  In

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Because McKeithen sues individuals acting under the color of federal law, not state law, I construe his claims for damages under *Bivens* rather than 42 U.S.C. § 1983.

[3] ECF No. 2.

[4] McKeithen is no longer incarcerated.

[5] *See* 28 U.S.C. § 1915A(a).

its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[6] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[7]

Under *Bivens*, a plaintiff may sue a federal officer in his or her individual capacity for damages caused by constitutional-rights violations.[8] "Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*."[9] To state a claim under *Bivens*, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a federal actor.[10]

Dismissal for failure to state a *Bivens* claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief.[11] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[12] Allegations of a *pro se* complainant are held to less

---

[6] *See* 28 U.S.C. § 1915A(b)(1)(2).

[7] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[8] *Bivens*, 403 U.S. at 389.

[9] *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

[10] *See id.*

[11] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[12] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

stringent standards than formal pleadings drafted by lawyers,[13] but a plaintiff must provide more than mere labels and conclusions.[14] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[15] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

## II.    Screening McKeithen's complaint

McKeithen brings this action for events that he claims took place while he was incarcerated at NSDC.  McKeithen sues Defendants Dr. Landsman, Nurse Sherry, Case Manager Fletcher, Counselor Fergerson, Correctional Officer ("C/O") Jones, Nurse Samantha Tsui, Sergeant Freeman, C/O Swann, and Does.  He asserts two claims and seeks monetary damages.[17]

### A.    The factual basis for McKeithen's claims

McKeithen transferred to NSDC on September 21, 2021.  During the intake process, he informed medical staff about his various medical issues and believed he qualified for a bottom bunk.  The intake nurse seemed to agree, but private prison officials assigned him a top bunk. McKeithen tried multiple times to move to a lower bunk, but private prison officials and medical staff never moved him.[18]

In the early morning of October 18, 2021, McKeithen got out of bed to use the restroom. While at the urinal, he blacked out, fell backwards, and smacked his head on the concrete floor.

---

[13] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[16] *Id*.

[17] ECF No. 4 at 1–4, 6–8.

[18] *Id*. at 12–15.

The sound of his head smacking on the floor woke up other inmates, who then witnessed McKeithen fall forward, hit his head on the metal urinal, and have a seizure on the ground.[19]

Despite the seriousness of McKeithen's injuries and multiple prison staff opining that he should see a doctor and go to the hospital, medical staff sent McKeithen back to his housing unit without cleaning him up. When private prison officials sent McKeithen back to the medical unit, nobody would send McKeithen to the hospital. Thirty-four hours after the fall, McKeithen saw the prison doctor who told McKeithen that he did not need stitches and that he would heal.[20]

Over the next couple of weeks, some private prison officials and medical staff were worried about McKeithen, but nobody sent him to a hospital. Other private prison officials and medical staff did not care about McKeithen's injuries. He filed grievances for medical care, but nobody took him to a hospital. When prison officials did respond to McKeithen's grievances, they denied that he had received inadequate medical care.[21]

In early November 2021, the prison doctor agreed to send McKeithen to a specialist for further examination after McKeithen had met with the warden. However, instead of receiving treatment for his injuries, private prison officials transferred McKeithen to a different prison on December 1, 2021.[22]

McKeithen brings claims for Eighth Amendment deliberate indifference to serious medical needs (claim 1) and First Amendment retaliation (claim 2).[23]

---

[19] *Id.* at 15–16.

[20] *Id.* at 16–20.

[21] *Id.* at 20–25.

[22] *Id.* at 25–26.

[23] *Id.* at 5–6.

**B.      Legal standard for *Bivens* damages claims**

Title 42 U.S.C. § 1983 "permits the recovery of damages for constitutional violations by officers acting under color of *state* law."[24]  In *Bivens*, the Supreme Court recognized for the first time that an implied cause of action for damages would lie against federal narcotics agents for their alleged Fourth Amendment violations while searching the petitioner's apartment.[25]  The Supreme Court has "described *Bivens* as a more limited federal analog to § 1983."[26]  And it has explained that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."[27]

Recognizing a new cause of action under *Bivens* is a "disfavored judicial activity" that the Supreme Court has done on only two other occasions.[28]  In *Davis v. Passman*, the Supreme Court permitted a former congressional staffer's Fifth Amendment sex-discrimination claim to proceed under the Constitution.[29]  And in *Carlson v. Green*, the High Court held that "a federal prisoner's inadequate-care claim under the Eighth Amendment" for damages could lie against federal prison officials.[30]

---

[24] *Hernandez v. Mesa*, 589 U.S. 93, 109 (2020).

[25] *Bivens*, 403 U.S. at 389.

[26] *Hernandez*, 589 U.S. at 109 (cleaned up) (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).

[27] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

[28] *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).

[29] *Davis v. Passman*, 442 U.S. 228 (1979).

[30] *Carlson v. Green*, 446 U.S. 14 (1980).

In determining whether a *Bivens* action may lie, courts must engage in a two-step process.[31]  The court must first ask "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action."[32]  "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[33]  "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."[34]  "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'"[35]  These "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."[36]

### C.   McKeithen does not state an Eighth Amendment medical claim for monetary damages against private prison officials.

The Supreme Court has held that a private corporation operating a prison may not be sued under *Bivens*.[37]  In determining whether to permit a *Bivens* remedy for a federal prisoner seeking damages from privately employed personnel working at a privately-operated federal prison, the Supreme Court noted that "prisoners ordinarily can bring state-law tort actions against

---

[31] *See Egbert*, 596 U.S. at 492.

[32] *Id.* (cleaned up) (quoting *Ziglar*, 582 U.S. at 139).

[33] *Id.* (quoting *Ziglar*, 582 U.S. at 136).

[34] *Id.* (quoting *Hernandez*, 589 U.S. at 102).

[35] *Id.* at 493 (quoting *Ziglar*, 582 U.S. at 137).

[36] *Id.* at 492.

[37] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).

employees of a private firm."[38]  The Supreme Court declined to imply a *Bivens* remedy in a situation "where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here)" and directed the prisoner in that case to "seek a remedy under state tort law."[39]

I find that McKeithen fails to state a colorable Eighth Amendment claim against private prison officials for alleged medical-care violations.  Because the Supreme Court has declined to extend a *Bivens* remedy for this situation, McKeithen must pursue his medical claims in state court.  So I dismiss his claim without prejudice to his ability to refile it in state court, but without leave to amend here as amendment would be futile.

### D.     McKeithen does not state a First Amendment retaliation claim against private prison officials under *Bivens*.

Generally, inmates have a First Amendment right to file grievances and to pursue civil rights litigation in the courts.[40]  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[41]  To state a First Amendment retaliation claim in the prison context, a plaintiff must allege "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

---

[38] *Minneci v. Pollard*, 565 U.S. 118, 126 (2012).

[39] *Id.* at 131.

[40] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[41] *Id.*

(4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[42]

I find that McKeithen has not stated a colorable retaliation claim. Based on his allegations, private prison officials did not treat his injuries before or after he filed grievances and, thus, McKeithen cannot demonstrate that private prison officials engaged in an adverse action because of any protected conduct. Even if McKeithen were able to set forth factual allegations to support a retaliation claim, he would not be able to pursue that claim in federal court. In *Egbert v. Boule*, the Supreme Court held that "there is no *Bivens* action for First Amendment retaliation" because "Congress, not the courts, is better suited to authorize such a damages remedy."[43] Because the Supreme Court has declined to extend a *Bivens* action for Frist Amendment retaliation, I dismiss this claim without prejudice to McKeithen's ability to reassert it in state court, but without leave to amend here because amendment would be futile.

### Conclusion

IT IS THEREFORE ORDERED that the application to proceed *in forma pauperis* **(ECF No. 1) is DENIED as moot** because McKeithen has paid the filing fee.

IT IS FURTHER ORDERED that **this case is DISMISSED** in its entirety for failure to state a claim, without leave to amend but also without prejudice to McKeithen's ability to bring his claims in state court.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to **SEND** McKeithen a copy of his complaint (ECF No. 4), **ENTER** judgment accordingly, and **CLOSE** this case.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: July 24, 2024

---

[42] *Id*. at 567–68.

[43] *Egbert*, 596 U.S. at 499.

8